IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | NO. 2:09-CR-35 |
| ) | |
| **KWASI MITCHELL,** ) | |
| ) | |
| **Defendant.** ) | |

## OPINION AND ORDER

This matter is before the Court on the Motion to Suppress Statements, Admissions and Confessions, Request for a Hearing and Points and Authorities Thereon, filed by Kwasi Mitchell on October 23, 2009. For the reasons set forth below, the motion is **DENIED**.

BACKGROUND

Defendant, Kwasi Mitchell ("Mitchell"), was charged with one count of an eight count indictment on February 19, 2009. The count naming Mitchell, count 8, alleged that Mitchell and co-defendant Joshua Wampler distributed a mixture of a substance containing a detectable amount of heroin on or about November 17, 2008. Mitchell pled guilty without the benefit of a plea agreement. Following his guilty plea, on September 17, 2009, Mitchell was charged in two counts of a nine count superseding indictment. Count 1 alleges that Mitchell

and five others conspired to possess with the intent to distribute and distribute one kilogram or more of a mixture and substance containing a detectable amount of heroin from at least April 2007 continuing into at least November 2008.  Count 9 of the superseding indictment alleges that Mitchell distributed a mixture and substance containing a detectable amount of heroin on or about November 20, 2008.  These two counts remain pending against Mitchell.

Following his arrest, Mitchell's *Miranda* rights were read to him, he signed a waiver of these rights, and he was interrogated.  The reading of the *Miranda* rights, signing of the waiver, and interview were videotaped.  Mitchell now moves this Court to suppress any and all statements, admissions and confessions, and all evidence derived therefrom, arguing that these statements, admissions or confessions were obtained in violation of his privilege against self-incrimination and his right to counsel, as guaranteed by the Fifth and Sixth Amendments to the United States Constitution, because Mitchell was under the influence of narcotics at the time of the interrogation.

The Government filed a response to the instant motion on November 6, 2009, indicating that the instant motion raises issues of fact that are appropriate for a hearing.  A hearing took place on November 23, 2009, at which Detective Matthew Barr ("Det. Barr") testified for the Government, each side had the opportunity to submit evidence, and the Court heard argument from both the Government and Mitchell.  At the conclusion of the hearing, the Court took the motion under advisement.

In making the following findings of fact, the Court considered all evidence presented and the credibility of the witness.

FINDINGS OF FACT

Mitchell was arrested at approximately 9:00 a.m. on March 2, 2009, pursuant to a federal arrest warrant. Following his arrest, Det. Barr advised Mitchell of his *Miranda* rights. Det. Barr stated the following at the beginning of his interview with Mitchell:

> Before we talk to you, ask you any questions, we got to advise you of your rights. Okay? And what I'm going to have you to do is I'm going to read them to you.
> Do you read and write the English language? Okay.
> I'll read them to you. You go ahead and read it, and then initial just next to each stating you understand, and then we'll go through them one at a time.
> Do you understand you have the right to remain silent? That means you don't have to talk to us. Anything you say can be used against you in court. You have the right to talk to a lawyer for advice before we ask you any questions. You have the right to have a lawyer with you during any questioning. And if you cannot afford a lawyer, one will be appointed to you before any questioning, if you wish.
> Do you understand these rights? [Mr. Mitchell nodded yes]. Okay.
> And then are you willing to speak with us? Okay.
> Then go ahead and read this and then sign that. That says, I have read, or someone has read to me this advice of my rights, and I understand what my rights are.

(Def.'s Ex. D at 2; Def.'s Ex. C.) Mitchell signed the advice of rights form.

Det. Barr testified that he did not observe anything that would indicate that Mitchell did not understand his rights, as explained by the advice of rights form. Det. Barr had observed Mitchell during controlled purchases prior to the date of his arrest, and there was nothing that Det. Barr saw during his questioning of Mitchell that led him to believe that Mitchell was in a state that was different than what he observed during the previous controlled purchases.

Following the waiver of rights, Mitchell spoke with Det. Barr. Det. Barr inquired whether Mitchell was under the influence of narcotics and Mitchell advised he was not. Despite Mitchell's answer, Det. Barr continue to look for signs of intoxication. He did not perceive any signs of intoxication. The signs he was looking for included how Mitchell answered the questions, whether he was stumbling around as he walked, and how he responded to everything. Det. Barr reports that, based on his experience, daily users of heroin oftentimes can not function. They fall asleep. Mitchell was not falling asleep during the interview. Det. Barr reports that Mitchell behaved normally. Det. Barr asked Mitchell questions about his drug dealing, and Mitchell was able to recall what his drug dealing involved. Additionally, Mitchell was able to recall his Social Security number and address. Det. Barr did not perform any actual sobriety testing on Mitchell.

Although Mitchell has a distinctive speech pattern that, in another individual could be taken as a sign of intoxication, Det. Barr

did not believe Mitchell's speech pattern indicated Mitchell was under the influence during the interview. He believed that "that's how he just always spoke." No evidence was introduced to contradict this, although Defense counsel has insinuated that perhaps Det. Barr never had an opportunity to hear Mitchell speak when he was not intoxicated.

Mitchell did fail to answer one question appropriately. When asked his middle name, Mitchell provided Det. Barr with his middle initial, but was able to provide his full middle name upon further questioning. During the interview, Det. Barr never got the sense that Mitchell was not following or understanding him. With this one exception, which was quickly resolved, Mitchell appeared to understand what Det. Barr was saying to him during the entirety of the interview.

During the recorded interview, Det. Barr did nothing to put pressure on Mitchell to waive his rights. No promises were made to Mitchell. No physical force was used, and there was no threat of physical force.

Det. Barr testified that he is familiar with the effects of heroin and familiar with the fact that heroin addicts often use heroin on a daily basis. During the interview Mitchell acknowledged that he was a daily user of heroin with an over a gram a day addiction. Mitchell also indicated that following his arrest he was going to be sicker than a dog. However, Det. Barr has observed many individuals who he knows to use heroin on a daily basis, and he knows them to be able to conduct business transactions. Det. Barr testified that,

although he does not know definitively whether Mitchell was intoxicated: "People don't stay intoxicated 24-7. So just because I know that he uses daily doesn't mean that he's 24-7 he's intoxicated." Det. Barr opined that there are individuals who take heroin on a daily basis but do not have impaired judgment. Furthermore, Det. Barr expressed his belief that many heroin addicts take heroin to ward off the sickness of withdrawal, rather than to obtain a high.

A recording of a confidential informant made on or about November 17, 2008, confirms Mitchell's heavy heroin usage. The confidential informant is heard saying, "Binky's[1] so high right now it takes him a minute to answer the phone. I had to call him four times this morning." Although this speaks to his heavy heroin usage generally, it offers little insight into his specific state of mind at the time of his arrest, which was several months later.

Following Mitchell's interview with Det. Barr, Mitchell was brought before Magistrate Judge Paul R. Cherry for his initial appearance. Initially, Mitchell indicated to Magistrate Cherry that he had not ingested any illegal drugs since the afternoon of the previous day. But, thereafter Pre-trial Services Officer Melinda Page reported under oath to Magistrate Judge Cherry that Mitchell told Officer Navarra that he last ingested heroin in the early morning hours of the same day, prior to his arrest and appearance before the magistrate. Upon further questioning by the Magistrate Judge,

---

[1]The record establishes that Binky is Mitchell's nickname.

Mitchell conceded that he had ingested heroin after 12:00 a.m. that very date. He estimated he ingested the heroin at 2:00 a.m. or 3:00 a.m. He snorted the heroin, and he used "three or four tenths". He reported that he was no longer feeling the affects of the heroin, and that he was also not sick, or experiencing withdrawal. Mitchell further reported that "I'm not saying anything that I wouldn't normally say. It's not affecting me like that." Further, Magistrate Cherry inquired whether Mitchell wanted Judge Cherry to proceed with the hearing as to him. Mitchell indicated that he did, and he reported that "I do a lot of heroin everyday." Although he acknowledged that Mitchell may not be under the affect of heroin to the extent that Mr. Wampler was, Magistrate Cherry had concerns about proceeding based on Mitchell's recent consumption of heroin. Judge Cherry's opinion was that both Wampler and Mitchell needed "to dry up some more before we continue."

Although there is no mention of Mitchell experiencing withdrawal symptoms on the day of his arrest, the docket in this case establishes more than one continuance thereafter for health related reasons. Mitchell's attorney represents these continuances were related to Mitchell's heroin withdrawal.

## CONCLUSIONS OF LAW

Defendant argues that, due to his recent use of heroin, his waiver of rights and his confession were involuntary, and any

-7-

statements, admissions or confessions of Mitchell must be suppressed pursuant to the Fifth and Sixth Amendments and *Miranda v. Arizona*, 384 U.S. 436 (1965).

The Fifth Amendment of the United States Constitution guarantees that no person "be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law . . . ." U.S. CONST. AMEND. V. The Fifth Amendment "[p]rotects a person only against being incriminated by his own compelled testimonial communications." *Doe v. U.S.*, 487 U.S. 201, 207 (1988). The Sixth Amendment guarantees the assistance of counsel in all criminal prosecutions. U.S. CONST. AMEND. VI. When an individual is taken into custody and is subject to interrogation, the individual must be advised of these rights. *Miranda v. Arizona*, 384 U.S. 436 (1966).

*Miranda* provides that statements obtained through custodial interrogation can not be utilized at trial unless the use of procedural safeguards guarantees that the accused has been informed of and has freely waived the Constitutional privileges of the Fifth Amendment. *Miranda*, 384 U.S. at 444-45. The burden rests with the Government to demonstrate that a defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel. *Id.* at 475. Likewise, the Government has the burden of establishing the voluntariness of any statement it intends to use at trial. *See United States v. Holmes*, 632 F.2d 167

(1st Cir. 1980); *United States v. Dodier*, 630 F.2d 232 (4th Cir. 1980); *United States v. Cox,* 487 F.2d 634 (5th Cir. 1973).

In *Moran v. Burbine*, the Supreme Court addressed what constitutes a valid waiver of *Miranda* rights. 475 U.S. 412 (1986). According to the Court in *Burbine*, this inquiry has two distinct dimensions.

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the *Miranda* rights have been waived.

*Id*. at 422 (internal quotations omitted).

But, later the same year, the Supreme Court decided another case addressing waiver of *Miranda* rights and voluntariness of confessions. *Colorado v. Connelly*, 479 U.S. 157 (1986). In *Colorado v. Connelly*, the Supreme Court stated the following with regards to the admissibility of confessions:

> . . . [C]oercive government misconduct was the catalyst for this Court's seminal confession case, *Brown v. Mississippi*, 297 U.S. 278, 56 S. Ct. 461, 80 L. Ed 682 (1936). In that case, police officers extracted confessions from the accused through brutal torture. The Court had little difficulty concluding that even though the Fifth Amendment did not at that time apply to the States, the actions of the police were "revolting to the sense of justice." *Id.,* at 286, 56 S. Ct., at 465. The Court has retained this due process focus, even after holding, in *Malloy v.*

> *Hogan,* 378 U.S. 1, 84 S. Ct. 1489, 12 L. Ed.2d 653 (1964), that the Fifth Amendment privilege against compulsory self-incrimination applies to the States. See *Miller v. Fenton, supra,* 474 U.S., at 109-110, 106 S. Ct., at 449.
>
> Thus, the cases considered by this Court over the 50 years since *Brown v. Mississippi* have focused upon the crucial element of police overreaching. While each confession case has turned on its own set of factors justifying the conclusion that police conduct was oppressive, all have contained a substantial element of coercive police conduct. Absent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law. Respondent correctly notes that as interrogators have turned to more subtle forms of psychological persuasion, courts have found the mental condition of the defendant a more significant factor in the "voluntariness" calculus. See *Spano v. New York*, 360 U.S. 315, 79 S. Ct. 1202, 3 L. Ed.2d 1265 (1959). But this fact does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional "voluntariness."

*Id.* at 163-64.

The Court in *Connelly* did not merely address the admissibility of confessions; the Court also addressed the issue of waiver of *Miranda* rights which had just been addressed early that year in *Moran v. Burbine*. In *Connelly*, the Supreme Court of Colorado had relied upon the testimony of a psychologist that the respondent could not make a "free decision with respect to his constitutional right of silence ... and his constitutional right to confer with a lawyer before talking to the police." *Id.* at 169. But, the Court had this to say about reliance on such testimony:

> We think that the Supreme Court of Colorado erred in importing into this area of constitutional law notions of "free will" that have no place there. There is obviously no reason to require more in the way of a "voluntariness" inquiry in the *Miranda* waiver context than in the Fourteenth Amendment confession context. The sole concern of the Fifth Amendment, on which *Miranda* was based, is governmental coercion . . .
>
> Respondent urges this Court to adopt his "free will" rationale, and to find an attempted waiver invalid whenever the defendant feels compelled to waive his rights by reason of any compulsion, even if the compulsion does not flow from the police. But such a treatment of the waiver issue would "cut this Court's holding in [*Miranda*] completely loose from its own explicitly stated rationale." *Beckwith v. United States,* 425 U.S. 341, 345, 96 S. Ct. 1612, 1615, 48 L. Ed.2d 1 (1976). *Miranda* protects defendants against government coercion leading them to surrender rights protected by the Fifth Amendment; it goes no further than that.

*Id.* at 170-71. Similarly, the Seventh Circuit, relying on *Connelly*, has stated that "It is well established that mental state alone cannot render a confession involuntary; government coercion must also be a factor." *United States v. Jones*, 359 F.3d 921 (7th Cir. 2004). Likewise, in *United States v. Chrismon* the Seventh Circuit recognized that "[a] diminished mental state is only relevant to the voluntariness inquiry if it made mental or physical coercion by the police more effective." 965 F.2d 1465, 1469 (7th Cir. 1992).

Whether the voluntariness of Mitchell's waiver of his *Miranda* rights or the voluntariness of his confession is considered, this Court is to use a totalities of the circumstances test. *See Connor v. McBride*, 375 F.3d 643, 650 (7th Cir. 2004)("In evaluating the

-11-

voluntariness of a waiver or confession, a court must consider the totality of the circumstances."); *Sweeney v. Carter*, 361 F.3d 327, 331 (7th Cir. 2004)(noting that the question of whether a defendant knowingly and voluntarily waived his *Miranda* rights is evaluated in light of the totality of the circumstances); *United States v. Dillon*, 150 F.3d 754, 756 (7th Cir. 1998)("A confession is voluntary if, in light of the totality of the circumstances, the confession is the product of a rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.").

The factors to be considered include, but are not limited to, the following: defendant's age, intelligence, background, experience, mental capacity, education and physical and mental condition at the time of questioning (including whether the defendant was under the influence of drugs or alcohol), the legality and duration of the detention, the nature of the interrogation, the duration of the questioning, and any physical or mental abuse by the police, including any threats or promises, whether suspect was informed of his rights, and defendant's prior experience with the police. *See United States v. Jones*, 359 F.3d 921, 923-24 (7th Cir. 2004); *United States v. Huerta*, 239 F.3d 865, 871 (7th Cir. 2001); *United States v. Sablotny*, 21 F.3d 747, 750 (7th Cir. 1994). These factors are to be evaluated from the perspective of a reasonable person in the position of the suspect. *Huerta*, 239 F.3d at 871.

But, the Supreme Court has clearly held that, even under the totality of the circumstances test, there must be *some* form of coercion or wrongdoing on the part of the police in order for this Court to grant the instant motion to suppress. *Connelly*, 479 U.S. at 167. The instant motion to suppress offered no allegations of government coercion. And, at the close of the hearing, when given an opportunity to state Mitchell's position regarding coercion, Mitchell's attorney did not point to any facts that demonstrate coercion.

There is simply no evidence of police coercion or wrongdoing in this case. The Government has established that the interviewing detective, Det. Barr, was unaware that Mitchell was intoxicated, and did not attempt to take advantage of any diminished capacity that may have resulted from intoxication. The Government has established that Mitchell was arrested pursuant to a federal search warrant and Mitchell was not detained at length prior to his waiver of *Miranda* rights and his confession. In fact, he confessed within a very brief period of time following his arrest. No promises were made to Mitchell. No threats of force were used. Mitchell was not deprived of food or sleep. Thus, in this case, there can be no finding of coercive police activity, and therefore no finding that either Mitchell's waiver of his *Miranda* rights or confession was involuntary. Even if coercion were not required the record establishes that Mitchell (despite his heroin use) had the requisite level of

comprehension to knowingly waive his rights.

This Court finds (considering all the evidence and the credibility of the witness) that, the totality of the circumstances show that Mitchell's waiver of *Miranda* rights and his confession were voluntary. Accordingly, Mitchell's motion to suppress cannot be granted.

CONCLUSION

For the reasons set forth above, Defendant's Motion to Suppress Statements, Admissions and Confessions, Request for a Hearing and Points and Authorities Thereon is **DENIED**.

**DATED: December 18, 2009**          /s/RUDY LOZANO, Judge
                                      **United States District Court**